IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

ANTOINETTE A.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

Case No. 4:20-cv-04205-JEH

**Order**

Now before the Court is the Plaintiff Antoinette A.'s Motion for Summary Judgment (Doc. 16) and the Commissioner's Motion for Summary Affirmance (Doc. 19).[1] For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Affirmance.[2]

**I**

Antoinette A. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on July 31, 2018, alleging disability beginning on April 10, 2018. Her DIB and SSI applications were denied initially on September 20, 2018 and upon reconsideration on January 14, 2019. Antoinette filed a request for hearing concerning her applications which was held on September 17, 2019 before the Honorable Susan F. Zapf (ALJ). At the hearing, Antoinette was represented by an attorney, and Antoinette and a vocational expert testified.

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 14, 15).
[2] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 10) on the docket.

1

Following the hearing, Antoinette's claims were denied on November 8, 2019. Her request for review by the Appeals Council was denied on July 23, 2020, making the ALJ's Decision the final decision of the Commissioner. Antoinette timely filed the instant civil action seeking review of the ALJ's Decision on September 24, 2020.

## II

On her Form SSA-3368, Antoinette claimed the following conditions limited her ability to work: rheumatoid arthritis (RA); fibromyalgia; and irritable bowel syndrome with constipation etiology. AR 240. At the time of the hearing, Antoinette was 45 years old and previously worked in home daycare and as a certified medical assistant. Antoinette testified that she felt she could not work because walking was very painful, sitting down for long periods of time caused swelling in her legs and her skin became tight and burned, and the medication she took to keep the swelling down caused her to use the bathroom between two to three times per hour. She sat in a recliner most of the day and got up for "maybe" a half hour at a time to eat or do laundry and then would return to the recliner. AR 51. Her medications included Plaquenil[3] and etodolac[4], and she took over-the-counter extra strength Tylenol whenever she was in a lot of pain.

Antoinette saw an orthopedist, Dr. Andrew Bries, and a rheumatologist, Dr. Michael Miniter. She testified that Dr. Miniter diagnosed her with fibromyalgia in her 20s. She said early menopause when she was 37 made her body tenderness worse. When she experienced flare-ups, Kenalog steroid shots "calm[ed] everything down." AR 55. As for her knee pain, Antoinette said she just dealt with it by walking less and climbing less steps. She continued with physical therapy and did "little exercise[s]" with a band while sitting in a chair at home. AR 57.

---

[3] Used for, among other things, RA. Prescribers' Digital Reference, https://www.pdr.net/drug-summary/Plaquenil-hydroxychloroquine-sulfate-1911 (last visited Feb. 23, 2022).
[4] "[U]sed to treat mild to moderate pain, osteoarthritis, or [RA]." Drugs.com, https://www.drugs.com/search.php?searchterm=etodolac (last visited Feb. 23, 2022).

Antoinette also explained that "with the fibromyalgia you get a lot of depression[.]" AR 58. She said duloxetine[5] helped with her depression, though she still experienced "major depression" during a flare-up. *Id*. She said she had trouble with her memory. She did not see a therapist.

Antoinette further testified that her biggest sources of pain were all over, including in her hands and knuckles. She found relief for her pain by laying in bed with several blankets, including an electric blanket. Upon questioning by her attorney, Antoinette explained there was "not really much [she] can do for long periods of time" with her hands. AR 70. She could make simple sandwiches, feed herself, and do laundry. She limited actions with her hands so she could reserve energy and stated she would be able to use her hands to hold, grip, and handle things for three to four hours in a 24-hour period. She stated she would be able to spend time on her feet for four hours, with breaks, in a 24-hour period.

### III

At Step Two of the five-step disability analysis, the ALJ found Antoinette had the following severe impairments: inflammatory arthritis; inflammatory bowel disease; osteoarthritis; migraines; and asthma. AR 29. The ALJ acknowledged that Antoinette had been treated for fibromyalgia, but ultimately determined it could not be considered as a medically determinable impairment (MDI). *Id*. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant as the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can only occasionally climb ramps and stairs, and can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch and/or crawl. The claimant is limited to frequent but not constant handling

---

[5] "Indicated for depression . . . and chronic musculoskeletal pain in adults; approved for fibromyalgia in adults[.]" Prescribers' Digital Reference, https://www.pdr.net/drug-summary/Cymbalta-duloxetine-288 (last visited Feb. 23, 2022).

3

and fingering bilaterally. She must avoid concentrated exposure to extreme cold, loud noise, such as industrial machinery, and bright, focused lighting, such as a spotlight. Finally, the claimant must be permitted to take an unscheduled 10-minute break once a day to use the bathroom.

AR 30.

The ALJ detailed Antoinette's hearing testimony, history of orthopedic treatment for left knee patellar instability with multiple daily dislocations, physical therapy records, treatment by an orthopedist for bilateral knee pain, history of treatment for abdominal pain, history of rheumatoid arthritis from 2013 onward, the State medical consultants' opinions, and primary care physician Dr. Nancy Short's statement in November 2018. The ALJ specifically identified medical records dated between May 2017 and March 2019. The ALJ detailed instances when Antoinette complained of lower back pain caused by lifting a couch, twisting her left knee while mowing the lawn, and injuring her left knee when climbing a fence (rather than during law mowing as she originally described). Dr. Short wrote that she "would have to ask [Antoinette] and go by [what Antoinette told her]" as to Antoinette's difficulties in terms of limitations in, among other things, standing, walking, lifting or carrying, and the ability to use her hands. AR 815.

The ALJ ultimately explained that Antoinette's reported symptoms of pain, fatigue, and limited mobility were consistent with the objective and other evidence to the extent that she could not perform more than sedentary work. She included particular postural limitations in Antoinette's RFC due to the latter's pain in her knees, back, and hands as well as her limited mobility. The ALJ included a limitation to only frequent bilateral handling and fingering in the RFC because of Antoinette's limited use of her hands due to RA.

IV

Antoinette argues the ALJ's findings of mental and residual functional capacity are affected by error and are not supported by substantial evidence.

A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566; 416.966.[6] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to

---

[6] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520; 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Antoinette claims error on the ALJ's part at Steps Two, Four, and Five.

## B

### 1

SSR 12-2p provides two ways of proving fibromyalgia is a MDI: the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria. Both require the claimant to show a history of widespread pain in all quadrants of the body that has persisted for at least three months. The first way also requires at least 11 positive tender points on physical examination found bilaterally and both above and below the waist and evidence that other disorders that could cause the symptoms or signs were excluded. SSR 12-2p at *2-3. The second way also requires the claimant to show: repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and evidence that other disorders that could cause those repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. SSR 12-2p at *3. SSR 12-2p also provides that an ALJ cannot rely upon a licensed physician's diagnosis of fibromyalgia alone. *Id*. at *2.

At Step Two, the ALJ determined that Antoinette's "medical records do not establish a diagnosis of fibromyalgia utilizing the appropriate diagnostic criteria from either [the 1990 or 2010] ACR." AR 29. Thus, the ALJ found that Antoinette's fibromyalgia could not be considered as a MDI. Antoinette argues that her "eminent" rheumatologist, Dr. Miniter, provided the relevant medical evidence of her fibromyalgia in his treatment notes. She cites to pages in the record where she complained of widespread pain and where she had 11 positive tender points on physical examination. She also contends that given Dr. Miniter's expertise, he

could not have reasonably reached a diagnosis of fibromyalgia had he not excluded other impairments as a cause.

The ALJ failed to articulate how, exactly, the evidence or record failed to "establish a diagnosis of fibromyalgia utilizing the appropriate diagnostic criteria." There is accordingly nothing for the Court to review to ensure that the ALJ sufficiently considered the record evidence and reached a supportable conclusion with regard to fibromyalgia. Though Antoinette essentially invites the Court to do so, it will not delve into the evidence to find support or the lack thereof for the ALJ's fibromyalgia conclusion. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner). Moreover, to find as Antoinette argues – that the ALJ made no efforts to obtain information she deemed necessary but lacking – the Court would have to assume that was the ALJ's reason for rejecting fibromyalgia as a MDI. The ALJ committed error in the first instance by failing to articulate exactly how the evidence failed to establish a fibromyalgia diagnosis. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) (stating that an ALJ "must adequately articulate her analysis so that [a reviewing court] can follow her reasoning"). The Commissioner nevertheless argues the ALJ's failure to find fibromyalgia to be a MDI was harmless error. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (explaining that administrative error may be harmless and thus a court ought not remand a case to the ALJ where it is convinced that the ALJ would reach the same result). The Court agrees the ALJ's error was harmless, especially when considered in the context of Antoinette's ultimate contention that absent the limiting effects of Antoinette's fibromyalgia, the ALJ's findings of physical and mental RFC are not supported by substantial evidence. The Court addresses the ALJ's RFC finding *infra*.

**2**

Antoinette asserts that because the ALJ found her fibromyalgia was not a MDI, the ALJ simply stopped the assessment of it at all steps of the disability analysis. The Commissioner questions what limits were left out as a result of the ALJ finding fibromyalgia was not a MDI. The Court likewise wonders. Antoinette points to the following evidence as symptoms of her fibromyalgia which presented limitation in her ability to work: increased pain and sensitivity to her skin and joints; problems with stiffness getting up and moving around; pain and stiffness in her hands; pain and stiffness in her ankles and hips; extreme fatigue; and back pain. She emphasizes her record statements that she limited the use of her hands due to pain and stiffness in them, and she highlights her testimony that fibromyalgia led to depression and decreased concentration.

In her Decision, the ALJ considered Antoinette's statements that: she was unable to work because of constant chronic pain in her hands, back, and knees; that she could only use her hands for 20-30 minutes at a time without pain and could only use them for a total of three to four hours in a day; and that it was difficult to grasp and hold things for long periods of time due to pain and stiffness in her hands. The ALJ also considered Dr. Miniter's treatment notes which indicated Antoinette saw him for joint pain and RA. The ALJ considered that Antoinette saw an orthopedist for bilateral knee pain in August 2018 and x-rays showed bone-on-bone osteoarthritis in her bilateral patellofemoral joints. In August 2019, during and orthopedic follow up, Antoinette reported her knees felt "really good" and her right knee had normal, painless range of motion and normal strength and tone whereas her left knee had full extension and was not unstable but showed some pain and crepitus with patellar grind with limited mobility. Specifically, with regard to Antoinette's history of RA, the ALJ observed that physical examination showed she moved easily without problems with gait or

balance, was found to have full range of motion in all joints with some tenderness in her shins and right shoulder, and was found to have no weakness in her upper or lower extremities. The ALJ further observed that Antoinette's RA was treated with Plaquenil and injections which she reported "helped her overall pain significantly," and Antoinette rated her RA as impacting her on a level of only two out of 10 (zero representing the patient was "very well" considering all the ways her arthritis affected her) whereas her provider rated it at a zero and her overall disease activity score was in the lowest range in January 2019. The ALJ also discussed physical examinations in January and March 2019 which showed the presence of Heberden's[7] and Bouchard's[8] nodes with occasional tenderness but which also revealed full range of motion in both hands.

The ALJ's explicit consideration of the foregoing evidence contradicts Antoinette's assertion that the ALJ failed to consider limitations her fibromyalgia caused. Certainly, the ALJ considered the complained of limitations as stemming from her RA and osteoarthritis (rather than fibromyalgia), but the evidence was one and the same. Thereafter, the ALJ built a logical bridge to her conclusions. For example, the ALJ reiterated Antoinette's complaints of back, knee, and joint pain and juxtaposed them with physical exams that showed "a relatively mild limitation of motion of the knee and lumbar spine, and were otherwise within normal limits." AR 33. The ALJ juxtaposed Antoinette's complaints with evidence that her conditions were stable with treatment, that she was able to perform activities such as lifting furniture, mowing her lawn, and climbing a fence, and

---

[7] "Hard nodules or enlargements of the distal interphalangeal joints of the fingers; seen in osteoarthritis." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/743198/0/Heberden_nodes?q=heberden%27s+nodes (last visited Feb. 23, 2022).

[8] "Bony enlargements or nodules, located at the proximal interphalangeal joints and resulting from osteoarthritis or degenerative joint disease." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/766339/0/Bouchard_nodes?q=bouchard%27s+nodes (last visited Feb. 23, 2022).

that exacerbations were successfully resolved with conservative treatments such as physical therapy. As for Antoinette's knees and hands, the ALJ noted that she had no surgeries for them and none had been recommended to her within the records. An "RFC assessment must incorporate all of the claimant's limitations supported by the medical record[.]" *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Here, it is apparent the ALJ did as was required of her; the relevant authority speaks of limitations, not a particular diagnosis in and of itself. *See, e.g., Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("It is not enough to show that [the claimant] had received a diagnosis of fibromyalgia with a date of onset prior to the expiration of the insured period, since fibromyalgia is not always (indeed, not usually) disabling"). Antoinette does not cite to any authority for the proposition that an ALJ reversibly errs by failing to find a claimant has a particular MDI but nevertheless considers all the complained-of symptoms and evidence pertaining to that MDI.

That the ALJ sufficiently considered the full extent of limitation posed by Antoinette's impairments is bolstered by the ALJ's consideration of the State medical consultants' opinions. As the Commissioner highlights, the State medical consultants were aware that Antoinette alleged RA *and* fibromyalgia and nevertheless opined that she remained capable of a range of unskilled light work with postural and environmental limitations. The ALJ concluded that those opinions were generally consistent with and supported by the medical evidence as presented at the time they were rendered, but she found the "full, longitudinal medical record and other evidence to be more persuasive of a lesser degree of exertional ability." AR 34. In explaining where she departed from the State medical consultants' opinions, the ALJ provided a further glimpse into her reasoning as to why she included certain limitations and omitted others from her RFC finding. *See*

*Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (stating the "ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits").

Lastly, the Court is unconvinced that the ALJ committed reversible error insofar as Antoinette's mental RFC is concerned. In her brief, Antoinette makes only passing reference to her testimony that her fibromyalgia led to depression and decreased concentration. At the hearing, Antoinette did not even go so far as to say she suffered from decreased concentration. Instead, the ALJ asked her if she told her doctor she was having difficulties with her memory (given her earlier testimony that she had trouble with her memory), and Antoinette responded that her doctor said "one of the side effects is – of fibromyalgia is concentration and focusing." AR 63. The Disability Determination Explanations at the initial level explicitly stated that the "medical evidence does not establish an MDI for any mental limitations" and that a "mental impairment has been ruled out." AR 86, 97. In contrast, Antoinette points only to her testimony as to mental difficulties, and she does not challenge the ALJ's subjective symptom evaluation. As the Commissioner argues, Antoinette does not point to any limits assessed by the rheumatologist or any other medical source that the ALJ failed to include in the RFC finding.

Though the ALJ erred at Step Two, that error was rendered harmless at Step Four where she considered the wide array of Antoinette's alleged symptoms and limitations stemming from the latter's impairments, albeit without explicitly identifying fibromyalgia as a MDI. Furthermore, the ALJ's consideration of the record evidence at Step Four was articulated clearly enough to enable the Court to "assess the validity of the ALJ's ultimate findings and afford [Antoinette] meaningful judicial review." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ formulated a RFC that was responsive to Antoinette's complaints of limitation

while also reflective of substantial medical and other evidence of record. Remand is not warranted.

V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 16) is DENIED and the Defendant's Motion for Summary Affirmance (Doc. 19) is GRANTED. The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Antoinette A., is AFFIRMED." This matter is now terminated.

*It is so ordered.*

Entered on February 24, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE